UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ARCHIE & ANGELA HUDSON,                                                          PLAINTIFFS
on behalf of themselves and all of those
similarly situated

v.                                                         CIVIL ACTION NO. 3:16cv596-DPJ-FKB

WINDOWS USA, LLC, d/b/a WINDOWS USA                                              DEFENDANTS
& ALASKAN WINDOW SYSTEMS;
BIG FOUR COMPANIES, INC.; and WELLS
FARGO, N.A.

ORDER

This case is before the Court on Defendant Wells Fargo National Bank's ("Wells Fargo") Motion to Compel Arbitration and Dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3) [12] and Defendants Windows USA, LLC, d/b/a Windows USA and Alaskan Window Systems ("Windows USA"), and Big Four Companies, Inc.'s ("Big Four") Joinder [17] in Wells Fargo's Motion to Compel Arbitration.[1]  Because the Court concludes that the claims against Wells Fargo are within a valid arbitration agreement with a delegation clause, Wells Fargo's motion to compel arbitration is granted, but the Court denies the motion to the extent Wells Fargo seeks dismissal.  As for Windows USA and Big Four's joinder in Wells Fargo's motion, the Court will set the matter for oral argument and seek additional briefing from the parties.

I.      Facts and Procedural History

This case arises from Plaintiffs Archie and Angela Hudson's purchase of new windows for their home from Defendant Windows USA.  Big Four is allegedly the managing member of Windows USA.  Compl. [1] ¶ 4.  The purchase occurred following an in-home demonstration

---

[1] The Complaint named Wells Fargo, N.A., as a defendant, but Wells Fargo asserts that "[t]here is no such entity."  Def.'s Mot. [12] at 1 n.1.

and was financed via a Visa Home Projects Program credit card issued by Defendant Wells Fargo.

The Hudsons say Defendants' sales practices leading to the purchase and financing are deceptive, fraudulent, and unconscionable. They therefore filed this lawsuit on July 28, 2016, asserting statutory claims under the Truth in Lending Act and the Mississippi Consumer Protection Act as well as common-law claims for fraud, breach of contract, breach of implied warranties and covenants, and gross negligence. The Hudsons seek actual and punitive damages for themselves and on behalf of a class of similarly situated individuals under Federal Rule of Civil Procedure 23.

On September 16, 2016, Defendant Wells Fargo filed its Motion to Compel Arbitration [12]. Wells Fargo asserts that, pursuant to the terms of the credit-card application the Hudsons signed, they must arbitrate their claims against Wells Fargo. Defendants Windows USA and Big Four have joined in Wells Fargo's motion. Joinder [17]; Mem. [18]. Plaintiffs initially responded to the arbitration motion with a request for arbitration-related discovery, Pl.'s Mot. [15], but the Court denied that request and granted Plaintiffs additional time to respond to Defendants' motion and joinder. Order [26]. The matters raised have now been briefed, and the Court has personal and subject-matter jurisdiction.

II.     Analysis

The sole issue before the Court is whether the Hudsons must arbitrate their claims against Defendants under the Wells Fargo credit-card application they admittedly signed on December 9, 2015. Credit Card Account Application [12-1]. According to the Hudsons, they signed the first page of that ten-page document, but Windows USA's sales representative, Aaron Williams,

2

never presented the other nine pages of the application and pressured the Hudsons to sign without reading the document.

There is no dispute that the contract included an arbitration agreement, which is twice referenced just above the Hudsons' signatures:

> **ACKNOWLEDGEMENT:** You acknowledge receipt of a copy of the Credit Card Agreement including the Important Terms of Your Credit Card Account. You acknowledge the existence of the Arbitration Agreement contained in the Credit Card Agreement and you specifically agree to be bound by its terms.
> You acknowledge receipt of a copy of the Wells Fargo Financial National Bank Privacy Notice.
> Please refer to your Credit Card Agreement, including the Important Terms of Your Credit Card Account, for additional information about rates, fees and other costs.
> **SIGNATURE:** Your signature means that you have read and agree to the terms of our Credit Card Agreement, including the Important Terms of Your Credit Card Account, and our Arbitration Agreement. You acknowledge receipt of a copy of our Credit Card Agreement, our Arbitration Agreement and the Wells Fargo Financial National Bank Privacy Notice. You give us and we will retain a purchase-money security interest in goods purchased under this Agreement.
> If this credit application is for joint credit, you acknowledge that you intend to apply for joint credit that you both will use.

*Id.* at 1; *see id.* at 2 (containing the Arbitration Agreement). Wells Fargo therefore seeks an order compelling arbitration under the Federal Arbitration Act; Windows USA and Big Four join that motion.

A. Motion to Compel Arbitration

The Federal Arbitration Act provides as follows:

> If any suit or proceeding be brought in any of the Courts of the United Sates upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3. "Arbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate unless the court determines the parties agreed to arbitrate the dispute in question." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998).

> Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement. Ordinarily both steps are questions

3

>  for the court.  But where the arbitration agreement contains a delegation clause
>  giving the arbitrator the primary power to rule on the arbitrability of a specific
>  claim, the analysis changes.

*Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (citations omitted).

In this case, Wells Fargo asserts that the arbitration agreement contains an express delegation clause and otherwise incorporates the American Arbitration Association ("AAA") Rules, which include a delegation provision.  *See* Credit Card Account Application [12-1] at 2 (requiring arbitration over "disagreements about the meaning or application of this Arbitration Agreement" and providing that arbitration will take place "according to the [AAA] Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes").  Wells Fargo is correct that, if there is a valid arbitration agreement, then the delegation provision, coupled with the incorporation of the AAA Rules, "present[] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

Since Wells Fargo has pointed to a delegation clause, "the [C]ourt's analysis is limited." *Kubula*, 830 F.3d at 202.  It considers only "whether there is any agreement to arbitrate any set of claims"—a decision that "turns on state contract law."  *Id.*  Under Mississippi law, "[t]he elements of a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation."  *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 545 (Miss. 2013) (internal quotation marks, citation, and emphasis omitted).

Here, the Hudsons attack the fifth element—mutual assent—asserting fraud in the factum.  Fraud in the factum is one exception to the general rule that "[a] party is under an obligation to read a contract before signing it, and will not . . . be heard to complain of an oral

4

misrepresentation the error of which would have been disclosed by reading the contract." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 465 (5th Cir. 2003). "[F]raud in factum is a 'misrepresentation as to the nature of a writing that a person signs with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms.'" *GuideOne Mut. Ins. Co. v. Rock*, No. 1:06cv218-SA-JAD, 2009 WL 2195047, at *3 (N.D. Miss. July 22, 2009) (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 465 (5th Cir. 2003)).

But there is a key caveat to this defense in the arbitration context. Only fraud in the factum "relate[d] to the arbitration clause itself" can impact the question of whether a party to a contract "can be compelled to arbitrate." *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992), *overruled on other grounds as recognized in Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 381 (5th Cir. 2004). If the alleged fraud in the factum instead "relates to the entire agreement, then the Federal Arbitration Act requires that the fraud claim be decided by an arbitrator." *Id.* (citing *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)).

And that is precisely what the Hudsons allege. According to them, they were tricked into signing a credit-card agreement rather than a closed-in loan form. Hudson Aff. [27-1] ¶ 7. The salesman allegedly completed the credit-card application and "presented it to [the Hudsons], mixed with a plethora of other forms he had filled out [and] instructed [them] to hurry up and sign." *Id.* ¶ 11. As such, the Hudsons "never agreed to, [n]or were given a chance to read and understand . . . the now-discovered . . . Arbitration Clause printed on the back of the Wells Fargo Credit Card Agreement prior to [the salesman] defrauding [them] into signing page one of that misrepresented instrument." *Id.* ¶ 27; *see also* Pls.' Mem. [27] at 3 (arguing fraud in the factum as to the "Credit Card Agreement, including but not limited to, its Arbitration [Agreement]").

5

Because the Hudsons say the entire agreement was procured through fraud in the factum, their fraud-in-the-factum defense may not be considered by the Court.  *See Prima Paint Corp.*, 388 U.S. at 404.  Wells Fargo's motion to compel arbitration will be granted.

Finally, Wells Fargo urges the Court to dismiss the claims against it.  While the relevant section of the Federal Arbitration Act provides that a court "shall . . . stay" an action in which claims are referable to arbitration, 9 U.S.C. § 3, the Fifth Circuit has held that dismissal is appropriate "when *all* of the issues raised in the district court must be submitted to arbitration," *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).  Here, not all of the issues raised have been submitted to arbitration at this time.  *See infra.*  And even if *Alford* applied, it did not require dismissal but "held merely that dismissal was not an abuse of discretion."  *Apache Bohia Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5th Cir. 2003).  Given that the case otherwise remains open at this time, the Court declines to dismiss the claims against Wells Fargo and will instead stay the case as to those claims.

  B.  Joinder in Motion to Compel Arbitration

A closer question is presented by Windows USA and Big Four's joinder in Wells Fargo's motion.  Those defendants—both nonsignatories to the agreement containing the arbitration provision—say that the Hudsons must arbitrate their claims against them because those claims are inextricably intertwined with the claims against Wells Fargo.  While Mississippi did not always recognize a nonsignatory defendant's right to compel arbitration, *see generally Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002) (McRae, J.), the state eventually adopted various forms of equitable estoppel, beginning with *B.C. Rogers Poultry v. Wedgeworth*, 911 So. 2d 483 (Miss. 2005).

In *Wedgeworth*, a nonsignatory defendant attempted to compel a signatory plaintiff to arbitrate. The Mississippi Supreme Court acknowledged the Fifth Circuit's seminal opinion in *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), finding it "instructive" but not binding. *Wedgeworth*, 911 So. 2d at 491. The court explained that *Grigson* establishes two avenues for a nonsignatory to compel a signatory to arbitrate. *Id.* The first occurs "'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a nonsignatory.'" *Id.* (quoting *Grigson*, 210 F.3d at 527). The second exists "'when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Id.* (quoting *Grigson*, 210 F.3d at 527).

Because the first *Grigson* theory was not at issue in *Wedgeworth*, the court moved to the second *Grigson* theory and rejected it. *Id.* at 492 (citing *Ervin v. Nokia, Inc.*, 812 N.E.2d 534 (Ill. App. Ct. 2004)). Instead, the court held that interdependent-and-concerted misconduct might support arbitration if the interdependent-and-concerted misconduct occurred between a nonsignatory defendant and a signatory with which a "close legal relationship, such as, alter ego, parent/subsidiary, or agency relationship" existed. *Id.*

In this case, Defendants' opening memorandum relied on the interdependent-and-concerted-misconduct theory. Looking for such claims in the Complaint, the Court agrees that some—but not all—of the allegations against Windows USA and Big Four assert interdependent-and-concerted misconduct with Wells Fargo. The question is whether this means that all claims should be arbitrated, none should be arbitrated, or only those based on interdependent-and-concerted misconduct should be arbitrated. While the parties recognize this

7

issue, neither provides sufficient analysis or authority for the Court to rule. Further briefing is required.

Likewise, neither party delves deeply into the close-legal-relationship question. Windows USA and Big Four argue that the parties' status as "merchant and lender" establishes the "close legal relationship" *Wedgeworth* requires. Defs.' Joinder [18] at 6. But the only case they cite to support this merchant-and-lender argument is based on agency. *See* Defs.' Joinder [18] at 6 (citing *Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1039 (Miss. 2010) (affirming order compelling arbitration with non-signatory that "maintained . . . agency relationship" (quoting *Wedgeworth*, 911 So. 2d at 492))). If the question is whether Defendants maintained an agency relationship, the parties have not addressed any of the factors the Mississippi Supreme Court applies to that question. *See Miller v. R.B. Wall Oil Co., Inc.*, 970 So. 2d 127, 131 (Miss. 2007). The Court therefore desires further briefing on whether Windows USA and Big Four had a close legal relationship with Wells Fargo, including, but not limited, to an agency relationship.[2]

The parties are instructed to contact the Court's courtroom deputy within seven days to set this case for oral argument on Windows USA and Big Four's joinder. Supplemental briefing on the issues the Court has identified must be filed no later than ten days before the as-yet-to-be-set hearing. The supplemental briefs shall be filed simultaneously and shall not exceed ten pages. There will be no responses.

---

[2] The issue places both sides in a potentially uncomfortable position. Those claims for which the Hudsons allege interdependent-and-concerted misconduct involving Wells Fargo presumably depend upon the existence of an agency relationship among Defendants. But that might also trigger arbitration under *Wedgeworth*. Conversely, Windows USA and Big Four may have liability reasons to avoid mentioning agency in their joinder but would need to show something tantamount to that legal relationship to obtain arbitration.

III.     Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendant Wells Fargo National Bank's Motion to Compel Arbitration and Dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3) [12] is granted in part; the claims against it are stayed pending arbitration. Defendants Windows USA, LLC, d/b/a Windows USA and Alaskan Window Systems, and Big Four Companies, Inc.'s Joinder [17] in Wells Fargo's Motion to Compel Arbitration will be set for oral argument. Counsel should contact the undersigned's Courtroom Deputy, Shone Powell, within seven days of the entry of this Order to set the matter. Supplemental ten-page briefs, addressing the issues raised by the Court herein, shall be filed ten days before the scheduled hearing.

**SO ORDERED AND ADJUDGED** this the 5th day of April, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE